UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** <br><br> Plaintiff, <br><br> v. <br><br> **MIA AESTHETICS CLINIC ATL LLC,** <br><br> and <br><br> **MIA AESTHETICS SERVICES, LLC,** <br><br> Defendants. | **CIVIL ACTION NO.** <br><br> **JURY TRIAL DEMAND** |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Kiera Webb ("Webb"), who was adversely affected by the unlawful employment practices. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendants Mia Aesthetics Clinic ATL LLC and Mia Aesthetics Services, LLC (collectively, "Mia Aesthetics" or "Defendants")

1

subjected Webb to discrimination when it denied her request for a reasonable accommodation and terminated her employment because of her disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Defendant Mia Aesthetics Services, LLC is the parent company of Defendant Mia Aesthetics Clinic ATL LLC.

5. Defendant Mia Aesthetics Services, LLC is organized under the laws of the State of Florida and does business in the State of Georgia through Defendant Mia Aesthetics Clinic ATL LLC, and through employees operating out of its corporate headquarters who control, manage, and advise employees in Atlanta, Georgia.

6. Defendants maintain their corporate headquarters at 14000 SW 119 Avenue, Miami, Florida, 33186.

7. Webb worked at Defendants' facility located at 6491 Peachtree Industrial Blvd., Atlanta, Georgia 30360.

8. Employees of Mia Aesthetics Services, LLC facilitated and participated in the termination of Webb's employment.

9. Defendants are so integrated with respect to ownership and operations as to constitute a single or integrated employer for purposes of the ADA.

10. Alternatively, Defendants exercised sufficient control over the terms and conditions of Webb's employment as to constitute Webb's joint employers for purposes of the ADA.

11. At all relevant times, Defendants have continuously been doing business in the State of Georgia.

12. At all relevant times, Defendants have continuously had at least 15 employees.

13. At all relevant times, Defendants have been employers engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

14. At all relevant times, Defendants have been covered entities under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

15. More than thirty days prior to the institution of this lawsuit, Webb filed a charge with the Commission alleging violations of the ADA by Defendants.

16. On September 9, 2023, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

17. On February 26, 2024, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

19. On or about April 19, 2021, Webb began her employment with Defendants.

20. Webb's position with Defendants was Surgical Sales Coordinator.

21. As a Surgical Sales Coordinator, Webb provided consultation services to potential patients, educated potential patients on surgical procedures, and otherwise sold Defendants' services.

22. Webb's job duties primarily consisted of following up with potential "leads" from Defendants' website.

23. Webb's primary job duties consisted of speaking with potential patients over the phone and via text message to close sales and schedule surgical procedures.

24. Defendants assigned Webb a Google Voice number and Webb used the Google Voice number on her personal cell phone to call and text potential patients.

25. Webb performed her job adequately.

26. Webb was never disciplined for poor performance or attendance.

27. Webb was qualified for the Surgical Sales Coordinator position.

28. When Webb began her employment with Defendants, Defendants had a policy requiring all employees to wear a mask or face covering in the workplace.

29. On or about May 4, 2021, Webb informed her supervisor and Defendants' Atlanta on-site manager that she had been diagnosed with breast cancer.

30. Webb's chemotherapy treatments for her breast cancer began on or around June 30, 2021, and were expected to continue through on or about October 6, 2021

31. On or about July 6, 2021, Webb reached out to Defendants' Vice President of Human Resources, based in Defendants' corporate headquarters, to request a reasonable accommodation for her disability.

32. Webb met with Defendants' Vice President of Human Resources the following day and explained that she was starting chemotherapy, to be followed by a mastectomy and radiation treatment.

33. Webb asked Defendants' Vice President of Human Resources whether Webb could work remotely, on an intermittent basis, following her chemotherapy treatment appointments.

34. On or about July 19, 2021, Webb provided Defendants with supporting documentation from her physician which stated, Webb "is receiving chemotherapy every 2 weeks through 10/6/21. She is experiencing significant side effects such as fatigue, nausea, and generalized bone pain. She cannot work for 4-5 days after each treatment. Please accommodate her work schedule during this time. If you have any questions or need further information, please feel free to contact [our nurse]."

35. On or about the week of July 20, 2021, Webb discovered that Defendants rescinded its mask mandate policy and employees were no longer required to wear face coverings in the workplace.

36. On or around July 20, 2021, Webb explained to Defendants' Vice President of Human Resources that she had undergone multiple chemotherapy treatments, which lowered her white blood cell count, leaving her susceptible to the COVID-19 virus if she were to come into the office.

37. On or around July 20, 2021, in response to Defendants' recission of the mask mandate policy, Webb amended her accommodation request and asked to work remotely, full-time, while she underwent her chemotherapy treatments.

38. On or about July 22, 2021, Webb spoke with Defendants' Director of Sales, based in Defendants' corporate headquarters, who told Webb that not only could her work be done from home, but that he supported Webb working from home, and all she would need to work remotely was a phone.

39. On or around August 9, 2021, Webb and Defendants' Vice President of Human Resources spoke via phone.

40. During the August 9, 2021 call, Defendants' Vice President of Human Resources said that Webb would not be allowed to work remotely.

41. Webb raised the possibility of working a hybrid schedule where she would come into the clinic only to service consultations, which were by

7

appointment, and have the potential patients wear face masks for their appointments. Webb would then work remotely the remainder of the time.

42. Webb's role in potential patient consultations was to take a potential patient's weight and height and to prepare the room for the doctor.

43. Consultations were by appointment only and were only scheduled when doctors were not performing surgery.

44. Consultation appointments occurred no more than two or three times per week.

45. A potential patient's weight and height could have been recorded by the medical provider or any available sales coordinator.

46. No special skill was required to record a potential patient's weight or height.

47. Defendants would not agree to any accommodation which involved Webb working remotely.

48. On or about August 9, 2021, Defendants' Vice President of Human Resources emailed Webb stating that Defendants were "unable to accommodate the work from home request as the surgical sales coordinator role is not conducive to work from home."

49. Defendants stated that Webb must be in the office to service walk-in patients.

50. Walk-in patients were rare for Defendants and occurred, at most, two or three times between May 2021 and August 2021.

51. When patients walked in requesting service, up to three different sales coordinators were available to meet with the walk-in patient.

52. Because Defendants' doctors were often performing surgery, walk-in patients were generally not seen on the date that they walked in and had to make an appointment for a consultation on a later date.

53. Most consultation requests were submitted online.

54. On or around August 9, 2021, Defendants' Vice President of Human Resources offered Webb a part-time, in-office front desk receptionist role.

55. The part-time, in-office front desk receptionist role would not have been an effective accommodation.

56. The part-time, in-office front desk receptionist role did not allow Webb to earn commissions and reduced Charging Party's pay.

57. The part-time, in-office front desk receptionist role would have increased Webb's person-to-person contact.

58. On or about August 16, 2021, Webb replied to Defendants stating, "After discussing the offer with my family and care team we have determined that the offer would not be a reasonable accommodation for me. Thank you but I must decline your offer."

59. Defendants did not offer Webb any other accommodation that would allow Webb to continue working.

60. Defendants did not engage with Webb nor discuss with her alternatives to part-time, in-office front desk receptionist role.

61. On or about August 16, 2021, Defendants' Senior Human Resources Business Partner, based in Florida, sent a message to Defendants' Vice President of Human Resources saying, "I have reviewed Kiera [Webb]'s response and will process her resignation from her position."

62. Defendants' Senior Human Resources Business Partner suggested marking July 26, 2021, as the day Webb "resigned."

63. Webb did not resign.

64. Defendants fired Webb.

65. Upon information and belief, on or before October 19, 2021, Defendants hired a new surgical sales coordinator, who worked from her home in Marietta, Georgia.

66. In or around December 2021, Defendants implemented a formal telework policy permitting employees to work from home.

67. Prior to implementing the formal telework policy, Defendants had the capability to allow employees to work remotely.

68. Surgical sales coordinators often worked remotely using their phones and laptops to contact sales leads and access Defendants' systems.

69. Defendants allowed all employees to work from home for at least one month in 2020.

## STATEMENT OF CLAIMS

### *Failure to Accommodate*

70. Webb timely identified and requested a reasonable accommodation that would allow her to perform the essential functions of her job.

71. Webb's requested accommodation was reasonable.

72. Webb is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

   a. Webb has a record of an impairment, breast cancer and suppressed immune system, that substantially limit major life activities.

   b. Webb was able to perform all essential functions of the surgical sales coordinator position via remote work.

73. Defendants failed to conduct a reasonable investigation into Webb's requested accommodation and failed to meaningfully interact with or engage with Webb or anyone on Webb's behalf related to the requested accommodation.

74. Defendants failed to grant the accommodation to Webb that would have allowed her to perform the essential functions of her job.

### *Discriminatory Termination*

75. Defendants terminated Webb's employment because of her disability and/or need for a reasonable accommodation.

76. Defendants allowed the employee who replaced Webb to work remotely in the sales coordinator position shortly after Webb's termination and before the remote work system was fully implemented.

77. The effect of the practice(s) complained of above has been to deprive Webb of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

78. The unlawful employment practices complained of above were intentional.

79. The unlawful employment practices complained of above were done with malice or with reckless indifference to Webb's federally protected rights.

### **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in employment practices that discriminate against employees with disabilities and that retaliate against employees who engage in protected activity under the ADA.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendants to make Webb whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices.

D. Order Defendants to make Webb whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendants to make Webb whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendants to pay Webb punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN FLEGAL
Supervisory Trial Attorney

*/s/ Iriel Jones*
Iriel Jones
Trial Attorney
Georgia Bar No. 266716
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
Atlanta, Georgia 30303
iriel.jones@eeoc.gov
Telephone: 470-531-4808
Facsimile: 404-562-6905