IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MIA AESTHETICS CLINIC ATL LLC and MIA AESTHETICS SERVICES, LLC,<br><br>Defendants. | CIVIL ACTION NO.<br>1:24-CV-03407-MLB-AWH |

**PLAINTIFF EEOC'S OBJECTIONS TO DEFENDANTS' SEPTEMBER 18, 2025 SUPPLEMENTAL PRODUCTION OF DOCUMENTS**

Pursuant to the Court's August 18, 2025 Order [51], Plaintiff Equal Employment Opportunity Commission (the "EEOC" or "Plaintiff") hereby files its Objections to Defendants' September 18, 2025 Supplemental Production of Documents. For the reasons set forth below, the EEOC respectfully requests that the Court levy appropriate sanctions upon Defendants for their spoliation of evidence relevant to this litigation.

## I.    INTRODUCTION

For nearly 11 months, the EEOC has sought from Defendants a complete response to its seventh, eighteenth, thirty-first, thirty-second, and thirty-fourth requests for production of documents. *See* Mot. to Compel [32-1] at 3–5. These

requests collectively seek communications and sales data that are directly relevant to the issue at the center of this action: Defendants' ability to accommodate the remote employment of Kiera Webb while she underwent treatment for cancer. They seek records from four primary sources: (1) emails; (2) Salesforce data; (3) Google Voice data; and (4) Slack data.

The EEOC negotiated with Defendants for over two months following Defendants' initial refusal to produce responsive documents. *See* Mot. to Compel [32-1] at 5–6. After that proved unsuccessful, the EEOC sought the Court's intervention through a pre-motion discovery hearing, after which the Court directed Defendants "to produce requested discovery to Plaintiff as discussed" by April 16, 2025. *See* Minute Entry [29]. Rather than provide the requested discovery on that date, Defendants simply stated it did not exist. *See* Mot. to Compel, Exh. F [32-7].

The EEOC then moved the Court to compel Defendants' production, seeking that the Court compel not only the production of the requested information by Defendants, but also the hiring of a third-party e-discovery vendor to assist in Defendants' efforts to search and recover any missing responsive data. *See* Mot. to Compel [32]. The Court granted the EEOC's motion in part, ordering the production of the requested information but tentatively denying the EEOC's request for the imposition of a third-party vendor, providing Defendants with a second opportunity to search for and produce the requested information, but requiring any production to

2

be accompanied by a detailed explanation of Defendants' efforts to retrieve the information. *See* Order [42].

Defendants abided neither order, failing to provide an appropriately detailed statement of their efforts to search for and retrieve the requested information and, only after the EEOC objected to its deficient search, providing just three emails in a supplemental production. *See* Pl.'s Reply to Defs.' Resp. to Objections [49] at 4. Defendants provided to the EEOC and the Court self-serving, conclusory assertions that they had exhaustively searched all available emails, and that relevant Salesforce, Slack, and Google Voice data that once existed simply no longer does. *See* Defs.' Resp. to Pl.'s Objections [46]. Finding their production and explanation unavailing, the Court ordered Defendants to retain a third-party e-discovery vendor to assist in further efforts to "recover or restore any relevant and responsive materials," and to produce to the EEOC any newly uncovered materials by September 18, 2025. *See* Order [51] at 13–14. The Court specifically directed that Defendants focus their search on "four categories of data still being sought by the EEOC: (1) Salesforce data; (2) emails; (3) Google Voice data; and (4) Slack data." *Id.* at 14 n.6.

In the 30 days between the Court's Order [51] and September 18, 2025, Defendants did not once communicate with the EEOC about the progress of their

search-and-retrieval efforts or their supplemental production.[1] *See* Exh. A, Emails Between Counsel. The EEOC did not hear from Defendants about the supplemental production until the afternoon of September 18, 2025, when Defendants' counsel requested that the undersigned provide the last Bates-stamp number that Defendants had applied to their previous productions of documents to the EEOC. *See id.* at Thread 2. That evening, Defendants emailed the undersigned with a statement declaring that they "had complied with the Court's Order [ECF 51]" by retaining a third-party vendor and having their counsel personally oversee their renewed search efforts. *See id.* at Thread 1. Defendants attached to their email a link to a supplemental document production. *See id.* at Thread 1.

After 30 days of alleged search and retrieval efforts with the claimed assistance of a third-party vendor, Defendants' supplemental production of documents amounted to the following: 22 emails, one of which had previously been produced,[2] totaling 44 pages of information. *See* Exh. B, Defs.' Sept. 18, 2025 Supp. Prod. Fourteen of the 22 emails appear to supplement the chain of communication

---

[1] In fact, Defendants provided no response to the EEOC's August 19, 2025 recommendation of certain e-discovery vendors, and took 31 days to provide the EEOC with available deposition dates for three outstanding witnesses in response to its simultaneous request for availability. *See* Exh. A, Emails Between Counsel, Threads 2, 4.

[2] The "newly uncovered" emails produced by Defendants as MIA0000443–44 are identical to the emails Defendants previously produced as MIA0000220–21. *Compare* Exh. B, Defs.' Sept. 18, 2025 Supp. Prod. at MIA0000443–44 *with* Exh. C, MIA0000220–21.

between Ms. Webb and Defendants, and among Defendants' employees, related to Ms. Webb's request for an accommodation; seven emails relate to technical aspects of Ms. Webb's onboarding with Defendants; one relates to Ms. Webb's interaction with a patient; and *zero* relate to Defendants' rate of online sales consultations, sales made by Ms. Webb, or communications sent by Ms. Webb after business hours. *See id*. Indeed, Defendants' supplemental production did not even include the emails Ms. Webb has specifically attested to sending or receiving during her employment, that is, the one-to-two email communications between Ms. Webb and Yolanda Torres sent per week during Ms. Webb's four months of employment, the email containing the Microsoft Excel sales tracking sheet sent by Ms. Torres to Ms. Webb at the beginning of her employment, and the onboarding email sent by Ms. Torres to Ms. Webb containing her Salesforce and Google Voice login information. *See* Decl. of Kiera Webb [49-2] at ¶¶ 7–11.

Nor did Defendants append their thin supplemental production with any detail about what efforts they undertook to search for or recover any information, which data custodians were searched, or why their production failed to include *any* data from Salesforce, Google Voice, or Slack, or *any* emails to or from three of seven previously identified custodians (Heather Hardy, Jonathan Escobar, and Viviana Morales). Rather, the EEOC again had to ask for any explanation of Defendants' efforts. On September 23, 2025, the undersigned counsel contacted Defendants to

5

seek an explanation, requesting a response by September 25 to account for the September 29 deadline set by the Court for any objections to Defendants' production. *See* Exh. D, EEOC Letter to Defs. In their September 25, 2025[3] response to the EEOC's concerns, Defendants explained that they worked with their third-party e-discovery vendor to search undefined "Email mailbox data" covering a period that did not even include the entirety of Ms. Webb's employment with Defendants. *See* Exh. E, Defs. Letter to EEOC.[4] Defendants further noted that they simply "never saved" the Salesforce information at issue, that relevant Slack data was "no longer available," and that any relevant Google Voice data could not be restored. Exh. E, Defs. Letter to EEOC at 3–5.

In sum, Defendants' third attempt at complying with the Court's directives to produce relevant data leaves the EEOC with little more than when it began to seek documents in November 2024. Nearly 11 months later, three strikes are enough. The EEOC requests that the Court take Defendants at their word that directly relevant data that once existed no longer exists and impose appropriate sanctions for Defendants' spoliation of the same.

---

[3] Although Defendants' letter to the EEOC lists September 26, 2025 as the date on which it was sent, the undersigned counsel received it on September 25, 2025.

[4] Defendants state that they searched for emails sent between April 1, 2021 and August 1, 2021. *See* Exh. E, Defs. Letter to EEOC at 2. Ms. Webb's employment with Defendants ended on August 16, 2021. *See, e.g.*, Compl. [1] at ¶ 61.

## II.    ARGUMENT

### A. Sanctions Standards

This dispute pertains exclusively to electronically stored information ("ESI").

Rule 37(e) of the Federal Rules of Civil Procedure addresses spoliation as it relates

to ESI, providing that if

> information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

The Eleventh Circuit has observed that "Rule 37(e) creates a two-tiered

sanctions regime—with lesser sanctions under Rule 37(e)(1) and more severe

sanctions under Rule 37(e)(2)." *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75

F.4th 1290, 1311 (11th Cir. 2023). Both tiers of sanctions require a finding that "(1)

'electronically stored information that should have been preserved in the anticipation

or conduct of litigation' was 'lost because a party failed to take reasonable steps to

7

preserve it' and (2) that information 'cannot be restored or replaced through additional discovery.'" *Id*. (quoting Fed. R. Civ. P. 37(e)). "The requirements diverge after that." *Id*.

Evaluation of sanctions under Rule 37(e)(1) "are centered on the *effect* of a violation; they apply only where lost electronic evidence causes 'prejudice to another party,' which then justifies sanctions 'no greater than necessary to cure the prejudice.'" *Id.* (emphasis in original) (quoting Fed. R. Civ. P. 37(e)). Evaluation of sanctions under Rule 37(e)(2), meanwhile, "look more to the *cause* of the violation." *Id.* (emphasis in original). Upon a finding that a party acted with intent to deprive another party of the information's use in litigation, a court may impose sanctions under Rule 37(e)(2), even absent any finding of prejudice. *Id*. A court's analysis of a party's "intent to deprive" is "the equivalent of bad faith in other spoliation contexts." *Id.* at 1312.[5] In the absence of direct evidence of bad faith, courts considering whether a party acted in bad faith consider whether: (1) evidence material to the a claim or defense once existed; (2) the spoliating party caused or allowed the evidence to be lost; (3) the spoliating party knew or should have known

---

[5] As noted by the Eleventh Circuit in *Skanska*, the adoption of the modern incarnation of Rule 37(e) in 2015 displaced the applicability of the Circuit's traditional spoliation factors articulated in *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005), as they relate to electronically stored information. *Skanska*, 75 F.4th at 1312 n.18. However, analyses of "bad faith" under the *Flury* factors remain applicable to analyses under Rule 37(e) insofar as those analyses weigh a party's "intent to deprive" another of information. *Id*.

of its duty to preserve the evidence; and (4) the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *See Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 U.S. Dist. LEXIS 111659, at *45 (S.D. Fla. Nov. 16, 2009) (Rosenbaum, J.). *See also Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1185 (11th Cir. 2020) (citing *Calixto* with approval).

In sum, "Rule 37(e) essentially functions as a decision tree." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018). "The threshold inquiry is whether ESI has been 'lost,' which in turn requires a showing (a) that discoverable ESI existed when a duty to preserve arose but was not preserved due to a party's negligent failure to take reasonable steps to preserve it *and* (b) that it cannot be restored or replaced." *Id*. (emphasis in original). Upon such a showing, a court may "impose non-dispositive measures to cure any resulting prejudice." *Id*. Dispositive sanctions listed in Rule 37(e)(2) are reserved for cases in which "the loss was caused by the party's intent to deprive its adversary of the information for use in the litigation." *Id*.

### B. Defendants Had a Duty to Preserve the Lost Data.

As an initial matter, it is not within reasonable dispute that Kiera Webb's complete work email account, Salesforce data, Slack data, and Google Voice data once existed, as did Salesforce data relating to online sales consultations in Defendants' Atlanta office. Defendants have conceded as much in arguing against

their duty to produce the same on the grounds that the data no longer exists. For the same reason, there is no reasonable dispute that the balance of Ms. Webb's email account and all relevant Salesforce, Slack, and Google Voice data have been lost ("Lost Data").

Defendants failed to preserve the Lost Data despite being under a duty to do so through the pendency of Ms. Webb's employment, and certainly no later than December 29, 2021. On that date, Defendants received from the EEOC a notice of Ms. Webb's charge of discrimination against them. *See* Mot. to Compel, Exh. H [32-9]. In bold terms, the notice informed Defendants of a "**Preservation of Records Requirement**" that encompassed any and all "payroll and personnel records relevant to the charge until final disposition of the charge or litigation." *See id.* at 2 (emphasis in original). The notice cited 29 C.F.R. § 1602.14, which requires that *any* "personnel or employment record made or kept by an employer" be preserved for "a period of one year from the date of the making of the record" and, where a charge of discrimination has been filed with the EEOC or where the EEOC has filed suit, for such records to be kept "until the final disposition of the charge or the action."

Under the cited regulation, Defendants were obligated to preserve any records related to Ms. Webb's employment for at least a year from their creation. Given that Ms. Webb was employed by Defendants between April 19, 2021 through on or about August 16, 2021, Defendants were under an obligation to preserve *all* records related

to Ms. Webb's employment through at least April 19, 2022. Moreover, upon being notified of Ms. Webb's Charge of Discrimination on December 29, 2021, Defendants' obligation was extended through the pendency of her charge and of subsequent litigation, which continues today. At a minimum, Defendants' duty to preserve all records related to Ms. Webb's employment encompassed her own email, Slack, and Google Voice data and communications, as well as her sales data maintained in Salesforce.

Moreover, Defendants' duty to preserve records expanded on December 29, 2021, from just records related to Ms. Webb to all records "relevant to the charge or the action." 29 C.F.R. § 1601.14. Data "relevant to the charge or the action" is broader than the employment records of an aggrieved person. The regulation itself explains that such data includes records related to other employees or applicants whose comparative information is relevant to the claims asserted. *See id*. Here, such data would have included data not just about Ms. Webb, but about Defendants' ability to accommodate her request to work remotely in her role as a Surgical Sales Coordinator. Ms. Webb's Charge of Discrimination stated that her claims were centered on Defendants' denial of her request to work remotely and expressly claimed that Defendants had permitted another employee to work remotely shortly after denying her the ability to do so. *See* Exh. F, Charge of Discrimination. Defendants, who at the time couched their denial of Ms. Webb's requested

11

accommodation on grounds that her sales position could not effectively be performed remotely, *see, e.g.*, Exh. B, Defs.' Sept. 18, 2025 Supp. Prod. at MIA0000427, could reasonably have determined that Salesforce data related to remote sales made in Ms. Webb's office was relevant to the charge, to say nothing of data specific to Ms. Webb. Indeed, this Court has had little trouble concluding that such data is "quite directly relevant" to the claims presented in this action, *see* Order [42] at 7, which track the claims asserted in Ms. Webb's Charge of Discrimination.

As such, at all times since the creation of the Lost Data specific to Ms. Webb, Defendants were under an obligation to preserve it. And at all times since December 29, 2021, Defendants have been under an additional obligation to preserve the relevant comparative Lost Data, which includes remote sales data in its Atlanta office.

### C. Defendants Failed to Take Reasonable Steps to Preserve the Lost Data.

There is no basis to conclude that Defendants took reasonable steps to preserve the Lost Data.[6] Start with the relevant Salesforce data: Defendants have

---

[6] There is debate among district courts as to which party bears the burden of demonstrating the reasonability, or lack thereof, or a party's efforts to preserve information. *Compare Sosa v. Carnival Corp.*, No. 18-20957, 2018 U.S. Dist. LEXIS 204933, at *47–48 (S.D. Fla. Dec. 4, 2018) (placing the burden on the party moving for spoliation sanctions) *with DR Distributors, LLC v. 21 Century Smoking,*

conceded to this Court that *they* "removed [Ms. Webb] from Salesforce upon her termination," ultimately causing its destruction. *See* Defs.' Mem. in Opp'n to Pl.'s Mot. to Compel [37] at 5. On or about August 16, 2021, when Ms. Webb was terminated, Defendants were obligated to preserve for at least one year all records related to Ms. Webb's employment, which included Salesforce data specific to her, particularly in the context of a termination stemming from a determination that Ms. Webb could not effectively perform her role with a remote-work accommodation. *See* 29 C.F.R. § 1602.14 (noting that "[a]ny personnel or employment record" includes records related to "requests for accommodation" and "termination"). *See also Abdulahi v. Wal-Mart Stores E., L.P.*, 76 F. Supp. 3d 1393, 1396–97 (N.D. Ga. 2014) (finding that an employer had a duty to preserve video footage relied upon by the employer in terminating employee, stemming in part from 29 C.F.R. § 1602.14); *Grabenstein v. Arrow Elecs., Inc.*, No. 10-cv-02348-MSK-KLM, 2012 U.S. Dist. LEXIS 56204, at *15–17 (D. Colo. Apr. 23, 2012) (finding that emails related to an employee's short-term disability benefits coverage should have been preserved as records related to "terms of compensation" under 29 C.F.R. § 1602.14).

---

*Inc.*, 513 F. Supp. 3d 839, 979 (N.D. Ill. 2021) ("It seems odd to place the burden on the movant to show that the party that unquestionably destroyed the ESI failed to take reasonable steps to preserve the destroyed evidence."). The EEOC provides herein evidence from which to conclude that Defendants failed to make reasonable efforts to preserve the Lost Data but urges the Court to place any evidentiary burden on the issue on Defendants.

Any ambiguity around Defendants' obligation to preserve this data was extinguished when Defendants received notice of Ms. Webb's Charge of Discrimination on December 29, 2021, which indefinitely extended Defendants' preservation duties, and expanded them to include relevant Salesforce data about other employees, through the conclusion of any related proceedings. As Defendants further concede, they could have attempted to recover at least some Salesforce data related to Ms. Webb within six months of its deletion. *See* Defs.' Resp. to Pl.'s Objections [46] at 4; Exh. E, Defs. Letter to EEOC at 3. As such, for a period encompassing nearly three months *after Defendants received the Charge of Discrimination*, Defendants effectively concede that they did not act to recover Ms. Webb's Salesforce data when they could have. In fact, Defendants confirmed that they made no effort to preserve the Salesforce data, expressly stating that they simply "never saved" it. *See* Exh. E, Defs. Letter to EEOC at 3.[7] Further, Defendants have provided no explanation as to how they lost Salesforce data related to online sales in Atlanta generally, much less what efforts they made to preserve or recover it.

Defendants' loss of relevant Slack data is even less excusable. To the extent Defendants de-activated and lost Slack data relevant to Ms. Webb at the time of her

---

[7] Moreover, Defendants have provided no explanation whatsoever as to their search-and-recovery efforts for Salesforce data as it relates to Request No. 18 of the EEOC's Requests for Production, which seeks data pertaining to Defendants' Atlanta office generally, rather than specifically Ms. Webb. *See* Mot. to Compel [32-1] at 4.

14

termination, Defendants failed to abide by their general obligation to preserve such records for at least one year. *See* 29 C.F.R. § 1602.14. And to the extent Defendants failed to recover Ms. Webb's Slack messages upon receiving her Charge of Discrimination, they violated their further obligation to preserve records related to the Charge. As Defendants' own submissions to this Court represent, Slack permanently deletes messages "older than a year[.]" *See* Defs.' Resp. to Pl.'s Objections, Exh. B [46-2] at 1. *See also* Exh. E, Defs. Letter to EEOC at 3 (reiterating contention that Slack data is deleted after one year). Defendants, therefore, could have contacted Slack to restore the entirety of its data related to Ms. Webb through at least April 19, 2022, and could have continued to contact Slack to restore at least some portion of data through August 16, 2022, a period which fell between nearly four months and eight months after Defendants received notice of the Ms. Webb's Charge. There is no indication they did so.

The loss of Ms. Webb's Google Voice data fares similarly. As Defendants have conceded, Ms. Webb's Google Voice number was terminated at the time they terminated Ms. Webb's employment, causing "all data" to be deleted. *See* Pl.'s Objections, Exh. B [44-2] at 5. In deleting her Google Voice data at the time of her termination, Defendants unreasonably failed to abide by their general obligation to preserve records related to Ms. Webb for a year, and further violated their obligations related to the Charge of Discrimination by failing to attempt to recover it within a

15

reasonable timeframe. Defendants have indicated that they made no effort to recover the data at points where it may have been available. Defendants have represented to the EEOC that its Google Voice data, "including Ms. Webb's account and number," was "purged as part of" Defendants' general Google account deletion process that took place in *2023*, more than a year after Ms. Webb had filed her Charge of Discrimination. *See* Exh. E, Defs. Letter to EEOC at 5. Defendants have not indicated that they took any steps to preserve Ms. Webb's data before the purge.

Defendants have been less clear as to their efforts to preserve and recover emails relevant to this case, which they contend were "revisited" with the assistance of their third-party vendor, resulting in their most recent 22-email production. *See* Exh. A, Emails Between Counsel, Thread 1. Defendants simply state to the EEOC that they searched "the Email mailbox data, in PST file format," *see* Exh. E, Defs. Letter to EEOC at 2. Defendants did not provide details about the size or completeness of the file and do not reconcile such statements with their previous statement to this Court that they "lost any capability to access" the email inboxes of former employees when they "transitioned" their email infrastructure "from G-Suite to Microsoft Suite" in "May of 2023," *see* Defs.' Resp. to Pl.'s Objections [46] at 5, 9. Nevertheless, Defendants' sparse production, coupled with their previous statements about losing access to emails, leaves clear that the emails sought by the EEOC have been irretrievably deleted. Defendants' own representations about

transitioning email services in May 2023 indicates Defendants likely had the opportunity to access, retrieve, and preserve Ms. Webb's emails for about *17 months* after receiving notice of Ms. Webb's Charge of Discrimination. That Defendants latest "revisited" production does not even include routine emails which Ms. Webb has attested to exchanging with her supervisors during her employment indicates that they failed to do so. *See* Dec. of Kiera Webb [49-2] at ¶¶ 7–11.

### D. The EEOC is Prejudiced by Defendants' Loss of the Data.

In plain terms, the EEOC asserts in this action that Defendants could reasonably have accommodated Ms. Webb's treatment for cancer by permitting her to work remotely. *See generally* Compl. [1]. As briefed to this Court, Defendants primarily base their defense on allegations that Ms. Webb "was absent nearly 50% of the days" of her employment and Defendants were "unable to accommodate the work from home request" because of the necessity of "[i]n person presence" to Ms. Webb's sales role. *See* Defs.' Mem. in Opp'n to Mot. to Compel [37] at 2–4. Defendants also argue that the alleged costs involved in setting up a remote work program, which Defendants admit to setting up three months after denying Ms. Webb permission to work remotely, would have been an undue hardship. *See id*.

The EEOC has sought the Lost Data for the purpose of rebutting these arguments. Based on information the EEOC had reason to believe was in relevant emails, Salesforce, Slack, and Google Voice data, the Commission intends to

17

demonstrate in response to Defendants' arguments that Ms. Webb was, in fact, working remotely, and Defendants knew Ms. Webb was working remotely, on days on which Defendants now contend she was absent. The Lost Data would also show that Ms. Webb and other colleagues in Atlanta had been able to effectively work remotely at the time Defendants claimed it would not have been possible. The Lost Data is the best evidence for evaluation of the parties' arguments—it would have been a contemporaneous record of Ms. Webb's and other Atlanta employees' actual performance of their jobs and their ability to work remotely prior to Defendants' claimed million-dollar effort to set up remote work. *See* Defs.' Mem. in Opp'n to Pl.'s Mot. to Compel [37] at 4.

Without the Lost Data, the EEOC is left with little contemporaneous evidence of whether and how Defendants permitted their employees to work remotely at the time of Ms. Webb's termination, and of Ms. Webb's actual performance of her work. In that sense, the Lost Data is akin to photographs or recordings of events giving rise to claims, the loss of which courts have found to be prejudicial. *See Pinkney v. Winn-Dixie Stores, Inc.*, No. CV214-075, 2015 U.S. Dist. LEXIS 24122, at *11–13 (S.D. Ga. Feb. 27, 2015) (finding that a party was prejudiced by a loss of photographs of the scene of an injury because they would have been the "best evidence of the condition of the scene at the time of" the injury, notwithstanding an assertion that photographs would not have benefitted the non-spoliating party); *Butler v. Kroger*

18

*Ltd. P'ship I*, No. 2:19cv673, 2020 U.S. Dist. LEXIS 241307, at \*24–25 (E.D. Va. Nov. 30, 2020) ("[T]he [lost] video is the best evidence of what happened . . . and although determining what the video would have shown is entirely speculative, [the plaintiff] was nonetheless deprived of that opportunity to make her case.").

**E. Sanctions are Warranted.**

The Court should find that Defendants' spoliation of the Lost Data occurred in bad faith and should sanction them with an adverse inference under Rule 37(e)(2). Alternatively, the Court should sanction Defendants under Rule 37(e)(1) by estopping them from seeking summary judgment on issues related to the Lost Data and by permitting Plaintiff to present evidence of the Lost Data at any trial.

*1. An Adverse Inference is Appropriate.*

This Court is permitted to find that Defendants have acted in bad faith using circumstantial evidence, including where the loss of data cannot be credibly explained as lacking bad faith. *See Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312–14 (11th Cir. 2023); *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1185 (11th Cir. 2020) (quoting *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 U.S. Dist. LEXIS 111659, at \*45 (S.D. Fla. Nov. 16, 2009)). Defendants' loss of the data at issue cannot credibly be explained by anything other than bad faith. From the termination of Ms. Webb's employment, through the filing of her Charge of Discrimination, the investigation thereof, the filing of this litigation,

19

and their three attempts to produce relevant data as directed by this Court, Defendants have displayed a flagrant disregard of their duty to preserve documents and enable a fair adjudication of the claims at issue. Defendants destroyed data relevant to Ms. Webb's employment as soon as she was terminated and failed to take reasonable opportunities to recover it even after receiving notice of her Charge, in stark violation of their duties under 29 C.F.R. § 1602.14. *See supra*, Parts II-B–II-C.

Indeed, Defendants' 30(b)(6) representative testified that she did not take any action to preserve data upon receipt of Ms. Webb's charge and could not recall if anyone had ever informed her of a need to preserve her emails. *See* 30(b)(6) Dep. of Defs. [44-5] at 33–34. Another 30(b)(6) representative of Defendants testified that Defendants made no effort to recover Ms. Webb's emails through at least June 2, 2025. *See* 30(b)(6) Dep. of Defs. [44-1] at 27. The same representative could not recall whether anyone ever asked him to preserve or attempt to recover Ms. Webb's Google Voice data and claimed it was "not necessary" to reach out and recover the data. *See id.* at 36–37, 39. The representative went on to dismiss even the possibility that Defendants should have reached out to Slack in an attempt to recover information. *See id.* at 43. Defendants' complete failure to seasonably take any action to preserve relevant data is itself a basis to find bad faith. *See Skanska*, 75 F.4th at 1312–14 (affirming a finding of bad faith under Rule 37(e) where a spoliating party, *inter alia*, failed to suspend its ordinary data destruction policies,

20

"took no action" to educate its custodians and administrators about a litigation hold, and "made no effort" to collect relevant data until months after a litigation hold).

Further, Defendants' stunning failure to acknowledge, let alone act upon, their duty to preserve evidence is compounded by their repeated failures to work in good faith to rectify any errors. Even upon an order of this Court directing them to attempt to recover relevant information, the sum total of Defendants' efforts was a handful of leading questions to custodians asking them to confirm that the data was lost. And even upon this Court's extraordinary order that Defendants reattempt recovery of data with the assistance of a third-party e-discover vendor, Defendants provided the EEOC with nothing more than a handful of emails and no explanation as to what transpired with the troves of other data at issue. Only upon the EEOC's request did Defendants even attempt to explain what occurred. *See* Exh. D, EEOC Letter to Defs.

Defendants' pattern of behavior leaves no reason to conclude that they have approached their preservation duties in good faith. *See Fielder v. Superior Mason Prods., LLC*, No. 5:21-cv-00432-TES, 2022 U.S. Dist. LEXIS 228989, at *15 (M.D. Ga. Dec. 20, 2022) ("A pattern of disregard for the discovery process and timely disclosure of evidence is also indicative of bad faith.") (citing *Hornady v. Outokumpu Stainless USA*, 572 F. Supp. 3d 1162, 1194 (S.D. Ala. 2021)). Rather, after nearly 11 months of failure to search for, provide, or otherwise be transparent about the Lost Data, the Court should determine that Defendants have acted in bad

21

faith. *See id.* (imposing an adverse jury instruction under *Flury* where a party "had over seven months to participate in discovery and relay information to" the other party but "failed to do that to the standards required of litigants"). Defendants' disregard of the importance of the Lost Data and of any meaningful duty to recover it can only be deterred by an adverse inference that the Lost Data would have been favorable to the EEOC on the issues related thereto: the reasonability of a remote-work accommodation for Ms. Webb, whether the accommodation would have imposed an undue hardship on Defendants, and Ms. Webb's job attendance.

    2.  *In the Alternative, the Court Should Preclude Defendants from Seeking Summary Judgment on Issues Related to the Lost Data and Permit Plaintiff to Present Evidence of Lost Data to a Jury.*

In the absence of a finding of bad faith, the Court should nevertheless sanction Defendants under Rule 37(e)(1) to cure the EEOC's substantial prejudice resulting from their spoliation. Under Rule 37(e)(1), the Court can deny summary judgment to a spoliating party as a non-dispositive sanction. *See Maziar v. City of Atlanta*, No. 1:21-cv-02172-SDG, 2024 U.S. Dist. LEXIS 102327, at \*14–15 (N.D. Ga. June 10, 2024). *See also Guess v. TJX Co., Inc.*, No. 4:24-cv-30, 2025 U.S. Dist. LEXIS 81094, at \*10 (E.D. Tenn. Apr. 29, 2025); *Butler v. Kroger Ltd. P'ship I*, No. 2:19cv673, 2020 U.S. Dist. LEXIS 241307, at \*27–28 (E.D. Va. Nov. 30, 2020). So too can the Court permit a non-spoliating party to submit evidence at trial of the loss of spoliated data and likewise permit the jury to consider what the spoliated data

may have shown. *See Wilson v. HH Savannah, LLC*, No. CV420-217, 2022 U.S. Dist. LEXIS 134439, at *3–4 (S.D. Ga. July 28, 2022).

Here, the EEOC bears the burden of demonstrating that Ms. Webb's request to work remotely was reasonable under the circumstances. *See, e.g., Frazier-White v. Gee.* 818 F.3d 1249, 1255 (11th Cir. 2016). Defendants' loss of relevant contemporaneous data and communications, however, severely inhibits the EEOC's ability to carry its burden of showing that Defendants could have reasonably accommodated Ms. Webb's request to work remotely, as is its ability to evaluate and respond to Defendants' claims about Ms. Webb's performance. Moreover, without communications and data demonstrating Ms. Webb's ability to work remotely while she was employed, the EEOC would be limited in its ability to respond to arguments by Defendants that an accommodation would have imposed an undue hardship.

Akin to the text messages at issue in *Maziar* or the video recordings lost in *Guess* and *Butler*, Defendants have deprived the EEOC and this Court of the most objective, contemporaneous record of these issues. Defendants leave the EEOC and this Court with only whatever recollections witnesses can summon regarding Defendants' remote sales operations in Atlanta and of Ms. Webb's employment during the summer of 2021, which are no substitutes for data. *See Abdulahi v. Wal-Mart Stores E., L.P.*, 76 F. Supp. 3d 1393, 1397 (N.D. Ga. 2014) (finding, under a *Flury* analysis, that testimony about what a spoliated video would have shown about

23

a plaintiff's work performance was "not a substitute for the actual footage"). *See also Skanska*, 75 F.4th at 1313 (11th Cir. 2023) ("[I]t should go without saying that deposing workers well after an event is not a perfect substitute for reviewing their contemporaneous text messages."). Neither party will be able to cross-reference and challenge testimony put forth by the other using communications and sales data that the Court has already deemed "directly relevant" to the issues described herein.

At the very least, this limitation should preclude any finding in Defendants' favor that there is no material dispute of fact over these issues. Moreover, as the non-spoliating party, the EEOC should be spared the burden and expense of seeking further discovery from Defendants on these issues and briefing them at summary judgment. The parties and the Court should be permitted to instead focus the remainder of discovery, summary judgment briefing, and the pretrial period on issues for which substantial competent evidence has been preserved.[8]

---

[8] To this end, the EEOC regrettably requests that the Court again extend the discovery period through 30 days after the Court has resolved the requests made in these objections. As stated in its previous motions to extend the discovery period, the EEOC seeks to complete three remaining depositions. The EEOC sought dates from Defendants on August 19, 2025, in anticipation of a complete production of documents on September 18, 2025. *See* Exh. A, Emails Between Counsel, Threads 3–4. Defendants did not provide dates for these depositions until September 19, 2025—31 days after the EEOC's request, and one day after their 22-email supplemental production. *See id*. Defendants' apparent spoliation of relevant data again leaves the EEOC without knowledge as to the potential scope of these witnesses' knowledge, and the sanctions requested herein may impact the issues on which their testimony is needed.

Moreover, a jury should not be hamstrung in its consideration of issues related to the Lost Data. Without the ability to argue to the jury that Defendants spoliated the Lost Data and to ask that they make inferences as to what it may have included, the EEOC faces the same prejudice as it would at summary judgment: an inability to rebut Defendants' arguments on the matter using the best, contemporaneous evidence. Indeed, as the party that generally bears the burden of proof, a jury may view the lack of such evidence as a factor unfavorable to the EEOC, despite Defendants' loss of the data. The jury should thus at least be permitted, if not instructed, to infer that the Lost Data would have been unfavorable to Defendants.

## III.   **CONCLUSION**

The EEOC respectfully requests that the Court sanction Defendants for their spoliation of relevant data by imposing an adverse inference against them on the issues of the reasonability of Ms. Webb's request to work remotely, of whether such an accommodation would have imposed an undue hardship on Defendants, and of Ms. Webb's attendance during her employment with Defendants. Alternatively, the EEOC respectfully requests that the Court preclude Defendants from seeking summary judgment on the same issues, to permit the EEOC to argue issues related to Defendants' spoliation to a jury, and to impose any other sanctions deemed just and proper.

Respectfully submitted, this 29th day of September, 2025.

/s/ Fahad A. Khan
Fahad A. Khan
Trial Attorney
Georgia Bar No. 442892

Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
Atlanta, GA 30303
fahad.khan@eeoc.gov
Telephone: (470) 531-4811
Facsimile: (404) 562-6909

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), counsel certifies that the foregoing document was prepared using font and point selections approved by the Court in Local Rule 5.1.

This 29th day of September, 2025.

*/s/ Fahad A. Khan*
Fahad A. Khan

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of Court using the CM/ECF system, causing a copy thereof to be served upon all counsel of record in this action.

This 29th day of September, 2025.

*/s/ Fahad A. Khan*
Fahad A. Khan