IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MIA AESTHETICS CLINIC ATL LLC and MIA AESTHETICS SERVICES, LLC,<br><br>Defendants. | CIVIL ACTION NO.<br>1:24-CV-03407-MLB-AWH |

**PLAINTIFF EEOC'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO DEFENDANTS' SEPTEMBER 18, 2025 SUPPLEMENTAL PRODUCTION OF DOCUMENTS**

Beneath the fervor of Defendants' Response [60] lies substantial common ground: the Parties agree that (1) the data at issue before the Court once existed, (2) the data no longer exists, and (3) Defendants did not take action to preserve or recover the data at times in which they could have. The only question that remains is what to do now. Plaintiff Equal Employment Opportunity Commission (the "EEOC") respectfully urges the Court to impose appropriate sanctions.

I.      **INTRODUCTION**

Defendants employed Kiera Webb as a Surgical Sales Coordinator from April 19, 2021, until on or about August 16, 2021, when the EEOC alleges that Defendants

terminated her employment after denying her request to work remotely to accommodate her disability and need for chemotherapy. Notwithstanding their implementation of a formal remote work program shortly after firing Ms. Webb, Defendants contend that permitting Ms. Webb to work remotely would have imposed an undue hardship on its operations. Defendants further contend that Ms. Webb was not a "qualified individual" entitled to any accommodation by the Americans with Disabilities Act of 1990 (the "ADA") because of an alleged history of unpredictable absences from work. Accordingly, the EEOC sought to discover emails, Salesforce, Google Voice, and Slack data relevant to Defendants' own contentions. Defendants admit that they permanently lost this data but argue that the Court should take no action.

As an initial matter, it is important to consider what is not in dispute before the Court in light of Defendants' Response [60]:

Defendants received notice of Ms. Webb's Charge of Discrimination on or about December 29, 2021. *See* Resp. [60] at 6. That notice expressly instructed Defendants to preserve all records relevant to the Charge "until final disposition of the charge or litigation." Notice of Charge [32-9] at 2. At the time of the December 29, 2021 notice, substantially all of the data now at issue before the Court (the "Lost Data") existed or was recoverable.

Defendants admit that any relevant Slack data would not have begun to be permanently deleted until April 2022 and could have at least partially been preserved through August 2022. *See* Resp. [60] at 15–16. Nevertheless, Defendants took no action at the time to preserve the relevant Slack data.

Defendants also admit that relevant Salesforce data was not permanently deleted until "mid-February 2022." *See id.* at 23–24. Nevertheless, Defendants took no action at the time to preserve the Salesforce data.

Defendants further admit that relevant emails and Google Voice data were not permanently deleted until *2023*, when Defendants migrated accounts from Google to Microsoft. *See id.* at 13. Nevertheless, Defendants took no action at the time to preserve the emails or Google Voice data at issue.

Defendants do not put before the Court an image of an employer taking reasonable initiative to preserve data which this Court has determined to be relevant to this case. Nor could they, given their own corporate representatives have freely admitted to taking no action to preserve the Lost Data, dismissing such efforts as unnecessary. *See* Objections [54] at 20.

Defendants instead plead that they simply never had a duty to preserve the Lost Data in the first place, discarding its relevance to this case. They further claim that they have not acted in a manner that would justify sanctions under Rule 37(e)(2) of the Federal Rules of Civil Procedure and that no sanctions are justified under Rule

37(e)(1) because their loss of the data is purportedly the EEOC's fault.[1] The EEOC

urges the Court to reject these arguments and impose appropriate sanctions.

## II.    ARGUMENT

### A. Defendants Had a Duty to Preserve the Lost Data and Unreasonably Failed to Do So.

Defendants argue that they had no duty to preserve the Lost Data because the

files within the Lost Data are "not customarily part of an employee's personnel file

nor considered critical employment records." Response [60] at 20. The reach of 29

C.F.R. § 1602.14, however, is not limited to those documents that are "customarily"

part of a personnel file or those which an employer itself deems to be a "critical

employment record." Rather, the regulation broadly requires the preservation of

"[a]ny personnel or employment record," defining the term including but not being

limited to "records having do with" nearly any action related to an employee. *See* 29

C.F.R. § 1602.14. Once a charge of discrimination or litigation is filed, the regulation

further requires the preservation of "all personnel records relevant to the charge or

action until final disposition of the charge or action." *Id*. This requirement goes even

further beyond what is "customarily" in a personnel file or deemed a "critical

---

[1] The remainder of Defendants' Response [60] and associated declarations largely aims to restate Defendants' insistence that the Lost Data cannot reasonably be recovered at this juncture, years after its deletion. Defendants' arguments as to the purported reasonability of their belated recent efforts to recover the Lost Data is irrelevant to—and harmful to their cause on—the issue before the Court now: Whether their actions were reasonable at the time of its apparent permanent deletion.

employment record," noting that personnel records relevant to a charge or action include relevant comparative data about other employees. *See id*.

For this reason, courts have found that the regulation encompasses records beyond the types of formal items to which Defendants contend it is limited. *See Abdulahi v. Wal-Mart Stores E., L.P.*, 76 F. Supp. 3d 1393, 1396–97 (N.D. Ga. 2014) (finding defendant was under duty to preserve video footage due to ongoing EEOC investigation); *Grabenstein v. Arrow Elecs., Inc.*, No. 10-cv-02348-MSK-KLM, 2012 U.S. Dist. LEXIS 56204, at *15–17 (D. Colo. Apr. 23, 2012) ("Accordingly, the Court finds that Defendant violated its obligation to retain portions of Plaintiff's 'personnel or employment record(s)' pursuant to 29 C.F.R. § 1602.14 when it deleted emails relating to her entitlement to disability benefits."). Tellingly, Defendants do not contend with these cases or their reasoning in arguing for a restrictive view of the regulation. Instead, Defendants cite to *Rummery v. Illinois Bell Telephone Company* for the proposition that "employers are not required to keep every single piece of scrap paper that various employees may create during the termination process." 250 F.3d 553, 558–59 (7th Cir. 2001). Defendants ignore, however, that *Rummery*'s statement was made in the context of an employer's destruction of "informal notes" containing information that was ultimately produced in other forms, unlike the complete destruction of data at issue here. *See id.* at 558.

5

Nevertheless, Defendants appear to conclude from *Rummery* that 29 C.F.R. § 1602.14 must be limited to data that is "customarily part of an employee's personnel file" or are otherwise "considered critical employment records." However, there is a space between "scrap paper"—like the informal notes at issue in *Rummery*—and "critical" parts of a formal personnel file. That space includes documents and data relevant to a charge or action, of which 29 C.F.R. § 1602.14 requires preservation.

Defendants attempt to escape sanction by arguing that the Lost Data simply is not relevant because it did not have "any bearing on [Ms. Webb's] accommodation request" or the termination of her employment. Response [60] at 20. In doing so, Defendants ignore that this Court has already found the data at issue to be "directly relevant" to this matter. *See* Order [42] at 7, 10, 12. Defendants fail to explain how contemporaneous evidence of digital and remote communications and transactions could possibly *not* be relevant to a charge of discrimination centered on their denial of Ms. Webb's request to work remotely and their alleged approval of remote work for another employee. Defendants also fail to rebut the EEOC's contention that records related to Ms. Webb's performance of her duties would be relevant to evaluating Defendants' own argument that her alleged absences from work rendered her unqualified under the ADA. Put simply, any reasonable employer should know that data related to an employee or the issues raised by an employee's claims, should be preserved. *Cf. Kohn v. Camden Cty. Sch. Dist.*, No. 2:21-cv-108, 2024 U.S. Dist.

6

LEXIS 58146, at *18–19 (S.D. Ga. Mar. 28, 2024) (finding school district should have preserved student's email inbox in lead-up to litigation).

Offering no credible argument that the Lost Data is irrelevant to this case, Defendants move the goalposts and claim that the data is of no significance because they themselves did not use it "at the time" of denying Ms. Webb's requested accommodation and terminating her employment. *See* Resp. [60] at 21. As an initial matter, Defendants provide no competent evidence to support their contention about their subjective motivations, which appears only in their response brief rather than through any appropriate testimony.[2] Moreover, Defendants fail to recognize that, under the ADA, a person's qualification for a role and the reasonability or burden of an accommodation is an objective inquiry. *See* 42 U.S.C. § 12111(8), (10) (defining "qualified individual" and "undue hardship" using objective criteria). As such, even

---

[2] In a declaration filed after their deadline to respond to the EEOC's Objections [54], and after they represented to the Court that the Lost Data played no role in their denial of Ms. Webb's accommodation request, Defendants present what they purport to be testimony from Senior Vice President for Human Resources Tanya Rodriguez. *See* Decl. [61-1]. Defendants' late filing appears to violate Rule 6(b) of the Federal Rules of Civil Procedure, which permits the extension of a deadline after its expiration only upon motion and only upon a finding of excusable neglect. Defendants have not filed a motion to support the filing, much less have they shown that their neglect in filing their complete response within the 70-day period they were allotted was excusable. The Court should decline to consider it. In any case, to the extent the declaration purports to offer testimony rather than generic legal conclusions, it does not support the contention that Defendants never considered the Lost Data when denying Ms. Webb's accommodation. The declaration states that Defendants did not use the "systems" at issue. *See* Decl. [61-1] at ¶ 12. It does not state that Defendants did not consider the Lost Data in some other form.

if an employer does not take certain data into account when denying an accommodation, the data may yet be relevant to whether the accommodation was reasonable. In other words, it remains relevant as an indicator of whether an employer could reasonably have been expected to provide an accommodation.

Defendants' argument is further flawed because it attempts to shift the window of time in which to evaluate its preservation measures away from the period after they received notice of Ms. Webb's charge and toward the time at which they terminated her employment. At the time they received the charge, Defendants knew or had reason to know that their objective ability to offer remote work was relevant to the claims and defenses implicated *and* had the ability to preserve the Lost Data. Defendants' unsupported contentions as to what they deemed important at the time of denying Ms. Webb's requested accommodation is inapposite to what they can and should have preserved upon receiving her charge, when they indisputably took on a duty to preserve evidence to the extent which they had not already. *See Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009) (finding employer held duty to preserve relevant emails after receiving a charge of discrimination).

Pivoting to their actual handling of the Lost Data, Defendants contend that they could not have violated their duty to preserve the Lost Data because they did not "rush to shred documents or wipe servers to cover up wrongdoing; they simply

8

proceeded with normal account management."[3] Resp. [60] at 21. In essence, Defendants would have the Court find that they acted reasonably merely because they did not depart their ordinary course of data destruction. However, Defendants' claimed consistency with their data destruction practices *is itself the issue*. An entity that encounters a duty to preserve documents must do more than delete them in the normal course—it must take affirmative steps to preserve the documents and recover them to the extent possible. *See Beck v. Test Masters Educ. Servs.*, 289 F.R.D. 374, 378 (D.D.C. 2013) (finding that a party "disregard[ed its] preservation obligations" by "fail[ing] to make any serious effort to recover" lost data). Here, Defendants boldly claim to have done the opposite by failing to take action to preserve or recover the Lost Data even after receiving Ms. Webb's charge of discrimination, when they had ample time to act. A reasonable employer would have paused its data destruction as to relevant data and attempted to recover relevant data on the path to deletion upon receiving the charge. Defendants emphatically state they did not do so.

Defendants further claim to have acted reasonably in failing to preserve the Lost Data because they were not specifically asked by the EEOC to preserve it.

---

[3] In making this defense, Defendants misleadingly contend that the EEOC has accused them of "intentionally" destroying evidence as soon as Ms. Webb was terminated. Defendants use quotation marks around the word "intentionally" while quoting other parts of the EEOC's Objections [54], making it appear as if the EEOC used the term. In fact, the word "intentionally" does not appear at all in the EEOC's Objections [54], let alone in the sentence which Defendants seemingly quote.

Brushing aside the broad ambit of 29 C.F.R. § 1602.14 and the preservation notice sent by the EEOC alongside Ms. Webb's charge, Defendants decry that they were never provided a "preservation letter enumerating those data sources" prior to this litigation. *See* Resp. [60] at 22. Defendants essentially argue that they had no duty to evaluate Ms. Webb's charge and determine which records within their possession, custody, or control at the time were relevant and in need of preservation. Taken to its logical end, Defendants' argument would result in employers having no obligation to preserve anything other than documents which are "customarily" part of a personnel file or otherwise subjectively deemed "critical" by the employer, unless and until other documents are specifically "enumerated" by an agency. Under their approach, Defendants would have investigating agencies race to enumerate and request every single specific piece of data that could be relevant before an employer recklessly permits its "normal" data destruction practices to permanently delete them. This approach is untenable and contrary to any understanding of what it means for an employer to bear an affirmative duty to preserve relevant information within their possession, custody, or control, which requires them to determine the relevancy of documents even before they are requested. *See In re Skanska United States Civ. Se.*, 340 F.R.D. 180, 185 (N.D. Fla. 2021) (noting that a litigant is "under a duty to preserve what it knows, or reasonably should know, is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, *is reasonably*

10

*likely to be requested during discovery* and/or is the subject of a pending discovery request.") (emphasis added) (internal quotation omitted).

**B. Defendants' Conduct Warrants Sanctions Under Rule 37(e)(2).**

The Court need not "indulge a fantasy" involving a "crystal ball and a guilty conscience" in which Defendants "maliciously" deleted the Lost Data to impose sanctions under Rule 37(e)(2). *See* Resp. [60] at 31. The Court need only believe Defendants' words. Specifically, the Court need only believe that Defendants did not take *any* action to preserve the Lost Data when they could have done so.

Defendants nevertheless plead that their failure to even attempt to preserve the Lost Data should, if anything, be ascribed to "[m]ere negligence" or a "mistaken assumption about relevance." *See* Resp. [60] at 24. However, Defendants' conduct from the time they received Ms. Webb's charge through this litigation demonstrates that their loss of the data goes beyond negligence or a simple mistake. Defendants' corporate representatives have testified that they not only took no action to preserve relevant emails upon receiving the charge in 2021, but they also failed to even attempt to recover them through at least June 2, *2025*, nearly seven months after receiving the EEOC's discovery requests. *See* 30(b)(6) Dep. of Defs. [44-1] at 27. Indeed, Defendants appear to not have taken any meaningful action to attempt to recover the Lost Data until ordered *twice* to do so by this Court.

11

Defendants' stunning insistence that the EEOC should have "enumerated" each type of document or data it should have preserved upon Ms. Webb's filing of her charge further betrays their approach to the issue. Whether in 2021 or 2025, Defendants simply did not and do not believe themselves to hold any affirmative duty to preserve documents if it requires them to be proactive. To this day, Defendants have done little to preserve the Lost Data beyond the bare minimum of what the Court has ordered them to do, and even then, only upon repeated compulsion. This course of conduct is not mere negligence—it is the behavior of a party that simply does not believe itself to have a proactive obligation to find and preserve relevant data. The Court should not abide it.

Nor should the Court give credence to Defendants' insistence that their adherence to their own "normal" and "routine" data destruction practices absolves them from sanctions under Rule 37(e)(2). On this basis, Defendants attempt to distinguish their conduct from that of a spoliating party in *Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023). There, the Eleventh Circuit found the party's "utter failure to implement even the most basic data-protection safeguards . . . so egregious that an inference of bad faith [was] easy to make," finding the party's pleading that records were lost due to "'routine' document destruction policies" to be insufficient to avoid sanction. *See Skanska*, 75 F.4th at 1313. Defendants claim that *Skanska* is inapplicable here because it involved

12

the destruction of data after litigation had been filed and involved text messages that were more relevant to that case than the Lost Data is to this case. But Defendants' destruction of the Lost Data coming before this litigation was filed has no bearing on the propriety of their actions. Rather, it is undisputed that the Lost Data was not permanently deleted until after Defendants received notice of Ms. Webb's charge, when they were under a broad duty to preserve and when they could have foreseen litigation. Moreover, Defendants' argument again ignores that this Court has already found the Lost Data to be "quite directly relevant" to this case. *See* Order [42] at 7.

## C. The Prejudicial Effect of Defendants' Loss of the Data Warrants Sanctions Under Rule 37(e)(1).

Defendants argue that sanctions are additionally unwarranted under Rule 37(e)(1) because the EEOC has not been prejudiced. Defendants rest their argument on the grounds that the Lost Data is of little to no relevance, that the EEOC can gather similar evidence through other sources, and that any prejudice created by Defendants' loss of the data is the EEOC's fault. Each argument is meritless.

The Lost Data is indisputably relevant to this case. As already explained, the emails, and the Slack, Salesforce, and Google Voice data at issue are directly relevant to critical issues presented by this case: whether Defendants were capable of reasonably accommodating Ms. Webb's remote employment and whether, as Defendants claim, Ms. Webb had a history of unpredictable absences from her employment. *See* Objections [54] at 17–18. By its nature, the data would show, *inter*

13

*alia*, the degree to which (1) Ms. Webb performed tasks remotely during her employment, (2) Defendants' operations and sales could have been performed remotely, and (3) Ms. Webb was working remotely with Defendants' approval at times Defendants now claim she was absent from work. Defendants do not put forward any cogent response to these interests, instead deflecting that the Lost Data may not be a "smoking-gun metric." *See* Resp. [60] at 24. But "[e]vidence need not . . . be dispositive to be discoverable; so long as the evidence makes the disputed proposition less likely or more likely, it is relevant and discoverable." *Fla. Virtualschool v. K12, Inc.*, No. 6:11-cv-831-Orl-KRS, 2015 U.S. Dist. LEXIS 188154, at *9 (M.D. Fla. Sept. 18, 2015) (internal quotation omitted).

Further, Defendants' contention that the information reflected in the Lost Data can still be gleaned from witness testimony is both false and unavailing. The Lost Data is needed to provide precise information as to when, where, and how Ms. Webb worked during her employment with Defendants and to show the exact nature of Defendants' sales and operations in August 2021, when Defendants claim to not have been able to implement a remote work accommodation for Ms. Webb. No reasonable witness could testify from memory as to these items, and no reasonable factfinder could credit the testimony of a witness who does. In claiming otherwise, Defendants contradict the Eleventh Circuit's pronouncements regarding reliance on witness testimony as a substitute for contemporaneous data. *See Skanska USA Civ.*

14

*Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1313 (11th Cir. 2023) ("[I]t should go without saying that deposing workers well after an event is not a perfect substitute for reviewing their contemporaneous text messages."). Defendants' position would permit parties to recklessly permit the destruction of contemporaneous evidence on an issue and then seek judgment in their favor based on stale recollections offered in the heat of litigation. The Court should not permit Defendants to do so here.

Nor should the Court accept Defendants' proposition that the EEOC is at fault for Defendants' failure to preserve the Lost Data. According to Defendants, the EEOC should have raced to request the Lost Data in its entirety just weeks after Ms. Webb filed her charge to have had any chance of recovering the data before it "vanished." *See* Resp. [60] at 27.  Defendants raise this contention even though their own position statement to the EEOC never raised the defense that Ms. Webb was not qualified for her position by reason of alleged absences—a factor which contributes to the Lost Data's relevance today. *See* Defs. Position Statement [60-2]. Put simply, Defendants' Response evinces a profoundly incorrect belief that parties have no obligation to preserve anything other than what has been specifically "enumerated" for preservation. *See supra*, Part II-A.

### III.    CONCLUSION

The EEOC respectfully requests that the Court sanction Defendants as requested in its Objections [54].

Respectfully submitted, this 16th day of December, 2025.

/s/ Fahad A. Khan
Fahad A. Khan
Trial Attorney
Georgia Bar No. 442892

Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
Atlanta, GA 30303
fahad.khan@eeoc.gov
Telephone: (470) 531-4811
Facsimile: (404) 562-6909

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), counsel certifies that the foregoing document was prepared using font and point selections approved by the Court in Local Rule 5.1.

This 16th day of December, 2025.

/s/ Fahad A. Khan
Fahad A. Khan

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of Court using the CM/ECF system, causing a copy thereof to be served upon all counsel of record in this action.

This 16th day of December, 2025.

/s/ Fahad A. Khan
Fahad A. Khan